UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 07-CV-3520 (JFB) (ETB)
_____

Jean Boyer,

Plaintiff,

versus

Syosset Central School District,

Defendant.

_____

MEMORANDUM AND ORDER
April 14, 2008
_____

Joseph F. Bianco, District Judge:

Plaintiff Jean Boyer (hereinafter, "plaintiff" or "Boyer") brings this employment discrimination action alleging a hostile work environment and retaliation on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.*, and the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, against defendant Syosset Central School District (hereinafter, "defendant" or "the District").

Defendant moves to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth herein, defendant's motion is granted in part and denied in part.

I. Background

A. Facts

The following facts are taken from the Amended Complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Jean Boyer, a Haitian immigrant, has been employed by Syosset as a cleaner since in or about May 1989. (Compl. ¶¶ 11, 17.) As a cleaner, plaintiff performs custodial duties, including sweeping, mopping and waxing floors, transporting and removing rubbish, cleaning classrooms and bathrooms, managing other cleaners in crews, setting up equipment, and many other functions. (Compl. ¶ 18.) Plaintiff has served as a cleaner for

approximately 18 years. (Compl. ¶ 19.) During this period, plaintiff applied for approximately four promotional opportunities, but was not offered any of these positions. (Compl. ¶¶ 20, 21.)

In or about Fall 1997, plaintiff applied for a position as a member of the grounds and maintenance crew. (Compl. ¶ 22.) Plaintiff alleges that there has never been a Black member of the grounds and maintenance crew. (Compl. ¶ 23.) Defendant failed to respond to plaintiff's application. (Compl. ¶ 24.) Plaintiff was never provided an interview. (Compl. ¶ 25.) Plaintiff alleges that he was never considered for the position. (Compl. ¶ 26.) Defendant hired or promoted a male Caucasian, instead of plaintiff. (Compl. ¶ 27.)

On or about May 23, 2005, plaintiff applied for an open custodial position by delivering a form/application to Jeanette Perrotta, the Coordinator of Human Resources for the District. (Compl. ¶ 28.) Plaintiff alleges that, while Perrotta never submitted his application for review, Perrotta did submit the applications of numerous out-of-district Caucasian applicants. (Compl. ¶¶ 29, 30.) The position was filled by an out-of-district Caucasian applicant. (Compl. ¶ 31.) Subsequently, Boyer complained to Perotta about her failure to submit his application. (Compl. ¶ 32.)

On or about May 25, 2005, plaintiff applied for a second custodial position. (Compl. ¶ 34.) Plaintiff was interviewed for this position, but was rejected. (Compl. ¶ 35.) Plaintiff alleges that the interviewers informed plaintiff that he was qualified for the position. (Compl. ¶ 36.)

In or about June 2005, plaintiff applied for a third custodial position. (Compl. ¶ 37.) Plaintiff was again informed that he was qualified for the position. (Compl. ¶ 38.) During this interview, plaintiff advised defendant that he believed discriminatory practices were being used and that, if necessary, plaintiff would hire counsel to remedy any wrongdoing. (Compl. ¶ 39.) Defendant again rejected plaintiff for this position. (Compl. ¶ 40.) Instead, defendant hired a male Caucasian with no in-district experience. (Compl. ¶ 41.) The hired party was terminated soon thereafter. (Compl. ¶ 42.) In or about December 2005, plaintiff applied for this vacancy, but was again denied. (Compl. ¶ 43.) The compensation package for the positions sought by plaintiff included greater annual salary and benefits than those earned by plaintiff as a cleaner. (Compl. ¶ 44.) Plaintiff alleges that the individuals selected to fill the positions were less qualified than plaintiff was. (Compl. ¶ 45.)

Plaintiff alleges that over the course of this 18 year period of employment, he was unfairly subjected to repeated slurs, epithets, insults, and threats based on his race, country of origin and speech accent. (Compl. ¶ 46.) Plaintiff alleges that his mistreatment was open and notorious. (Compl. ¶ 47.)

In or about 1998, a male Caucasian custodian stated, in sum and substance, to a fellow Haitian employee: "I can kill you and take your intestines out, and Dr. Streitman and Nick aren't going to do anything because you are nothing." (Compl. ¶ 48.) The incident was brought to the attention of defendant. (Compl. ¶ 49.) Plaintiff alleges that, rather than transferring the above declarant, a Caucasian custodian, defendant discrminatorily transferred the Haitian

2

employee toward whom the statement was directed. (Compl. ¶ 50.) Plaintiff alleges that the above statement made by a manager/supervisor caused plaintiff, a native of Haiti, to experience annoyance, alarm, and fear for his safety. (Compl. ¶ 51.) As a result of this incident, plaintiff allegedly suffered mental distress, pain, and anguish. (Compl. ¶ 52.)

By letter dated May 7, 1998, defendant attempted to, but did not, transfer plaintiff. (Compl. ¶ 53.) On or about May 8, 1998, plaintiff filed a complaint of discrimination with the District. (Compl. ¶ 54.)

On or about August 25, 2005, Assistant Head Custodian, Brian Bridgewood (hereinafter "Bridgewood"), a male Caucasian, allegedly ordered plaintiff to perform a task that was impossible to complete. (Compl. ¶ 55.) Plaintiff advised Bridgewood that the task was impossible to complete. (Compl. ¶ 56.) The next day, Bridgewood and Tim Horace (hereinafter "Horace"), both custodians, acting in concert, allegedly screamed at plaintiff, stating in sum and substance, "How come I have time to do this and that. This is Bullshit. You are going to work alone. I'll make you work eight hours straight." (Compl. ¶ 57.) As a result, plaintiff began to cry. (Compl. ¶ 58.) Bridgewood and Horace allegedly retaliated and punished plaintiff by replacing his regular work routine with unfavorable tasks and assignments under unsafe conditions. (Compl. ¶ 59.) Subsequently, Bridgewood allegedly stated, in sum and substance, "F*** Jean Boyer. What's wrong with f***ing Haitian people? No one can get me in trouble." (Compl. ¶ 60.) Bridgewood also allegedly stated, in sum and substance, "We don't need no Haitians. The district doesn't need any Haitians for custodians." (Compl. ¶ 61.)

From May 1989 to September 5, 2006, plaintiff was assigned to work at Syosset High School on the 3:00 p.m. to 11:30 p.m. shift. (Compl. ¶ 62.) On or about September 5, 2006, plaintiff was ordered to hand over the keys to the school and his personal locker. (Compl. ¶ 63.) Plaintiff was then advised he was being transferred to another school. (Compl. ¶ 64.) Plaintiff was replaced with a Caucasian male with no experience. Plaintiff's duties and responsibilities were adversely affected by way of this transfer. (Compl. ¶ 65.) Plaintiff's job duties are now more burdensome, tedious and come with more responsibility though his compensation remains similar. (Compl. ¶ 66.)

On or about December 29, 2006, plaintiff filed a charge of discrimination with the EEOC. (Compl. ¶ 5.) Plaintiff was issued a Right-to-Sue letter on July 20, 2007.

B. Procedural History

On August 22, 2007, plaintiff filed the instant action. In his Amended Complaint, filed on October 22, 2007, plaintiff asserted causes of action under (1) Title VII of the Civil Rights Act of 1964 for hostile work environment, failure to promote, and retaliation; and (2) the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Plaintiff seeks compensatory and punitive damages, lost pay, front pay, pre- and post-judgment interest, attorneys' fees and costs. On December 5, 2007, defendant moved to dismiss certain claims. Oral argument was held on April 11, 2008.

3

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (May 21, 2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

III. DISCUSSION

In connection with the motion to dismiss, defendant makes the following arguments: (1) the hostile work environment claim must be dismissed because the alleged incidents were isolated and occasional, and did not occur in concert or with sufficient regularity so as to be pervasive; (2) plaintiff's failure to promote claims are time-barred under Title VII; and (3) the retaliation claim under Title VII must be dismissed because plaintiff cannot prove a causal connection between the protected activity and the allegedly retaliatory act.

In plaintiff's opposition brief, as confirmed at oral argument, plaintiff withdrew the hostile work environment claim. Therefore, the Court will address the remaining grounds for dismissal in turn.

A. Timeliness of Title VII Failure to Promote Claims

Defendant contends that plaintiff's Title VII failure to promote claims are untimely because none of the alleged discriminatory acts took place within three-hundred days of plaintiff filing a complaint with the EEOC on December 29, 2006. Prior to filing a Title VII claim in federal court, a plaintiff must institute proceedings with a state or local agency within 300 days. 42 U.S.C. § 2000e-5(e); *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 108-09 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)); *accord Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162 (May 29, 2007). These statutory filing periods are "analogous to [] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). With respect to these timing requirements, the time begins to run for each discrete discriminatory or retaliatory act when the act occurs. *See Morgan*, 536 U.S. at 114; *Hill*, 312 F. Supp. 2d at 472. Accordingly, in the instant case, claims for relief under Title VII for discrete acts that took place 300 days or more prior to December 29, 2006 are time-barred, except if

there is some basis for equitable tolling.

Here, plaintiff alleges that defendant discriminated against him based on his race by failing to promote him on four occasions: (1) Fall of 1997; (2) May 23, 2005; (3) June 2005; and (4) December 25, 2005. (Compl. ¶¶ 22, 28, 34, 37, 43.) Acts such as "termination, failure to promote, denial of transfer, [and] refusal to hire," are discrete acts, and thus independently subject to a 300-day time limitation. *Morgan*, 536 U.S. at 112-14; *see* 42 U.S.C. § 2000e-5(e)(1); *Forsyth v. Fed'n Employment and Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003); *see also Harris v. City of New York*, 186 F.3d 243, 247 n. 2 (2d Cir. 1999) (noting that, in New York, a plaintiff must file an administrative charge within 300 days of knowing or having reason to know of the alleged discriminatory act). Because plaintiff filed his EEOC complaint on December 29, 2006 and each of these alleged failures to promote falls well outside the 300-day time limitation, these claims for failure to promote are untimely. Moreover, plaintiff does not attempt to invoke the doctrine of equitable estoppel. *See Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 61 (2d Cir. 1986) ("The doctrine properly may be invoked in a case in which the employer has misrepresented the length of the limitations period or in some other way has lulled the plaintiff into believing that it was not necessary for him to commence litigation.") (quotations and citation omitted). In fact, at oral argument, plaintiff's counsel conceded that any failure to promote claim under Title VII was untimely. Accordingly, plaintiff's claims for failure to promote under Title VII are dismissed as untimely.[1]

## 2. Retaliatory Transfer Claim

Plaintiff alleges that he was the victim of unlawful retaliation pursuant to Title VII. In particular, plaintiff alleges that he was transferred in September 2006 because of complaints of discrimination he had made against defendant prior to the transfer.[2] For

---

[1] Plaintiff's complaint asserts a separate cause of action under 42 U.S.C. § 1983, which also includes the alleged failure to promote incidents. The Second Circuit has held that "claims under 42 U.S.C. §§ 1981 and 1983 need not be asserted within the 180- or 300-day period applicable to Title VII claims." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Instead, "[t]he statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years." *Id.* Accordingly, although the 1997 failure to promote incident is still untimely even under this three-year limitations period, the other three alleged failure to promote incidents are timely under Section 1983.

[2] As plaintiff's counsel acknowledged at oral argument, any alleged retaliatory acts which occurred more than 300 days prior to the filing of the EEOC complaint on December 29, 2006 would be time-barred as separate incidents of retaliation, even if they were related in some way to the ultimate transfer decision. *See Forsyth*, 409 F.3d at 572 ("Discrete discriminatory acts are time-barred, notwithstanding the fact that 'they are related to acts alleged in timely filed charges,' if they fall outside of the limitations period.") (quoting *Morgan*, 536 U.S. at 113). Therefore, the transfer, which is within the 300-day period, is the basis for plaintiff's retaliation claim. Plaintiff contends that the other time-barred incidents that led to the transfer are nevertheless admissible because they provide background to the defendant's motivation for the transfer. The Court declines to rule on that evidentiary issue at

5

the reasons set forth below, although defendant argues that this claim must be dismissed because plaintiff cannot establish an inference of wrongful transfer by reason of temporal proximity, there is no basis to dismiss the retaliatory transfer claim at the motion to dismiss stage.

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Generally, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170, 1178(2d Cir. 1996)).

Defendant argues that the claim must be dismissed because plaintiff cannot prove a causal connection between the protected activity and the adverse employment action. The Supreme Court has recently reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock*, 127 S.Ct. 910, 918 (2007). No such heightened pleading requirement for discrimination claims exists in Title VII. Therefore, the controlling standard for survival of a motion to dismiss lies in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that complaints in discrimination cases "must satisfy only the simple requirements of Rule 8(a)").

The Second Circuit has emphasized that the Federal Rules "set forth a pleading standard under which a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006). Such a pleading "will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation omitted). A clear statement from the plaintiff alleging discrimination by the defendant is sufficient to achieve these goals. *See Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) (holding that a complaint stating "that defendants have in a willful and malicious manner discriminated against plaintiff" provided sufficient notice of the discrimination claim).

Plaintiff has made a sufficiently clear statement in the complaint to satisfy Rule 8(a). In particular, plaintiff has alleged a series of discriminatory actions following the June 2005 discrimination complaint and culminating in the September 2006 transfer. The alleged discriminatory incidents include: (1) the December 2005 rejection of Boyer's

---

this early juncture, but will allow discovery to take place with respect to these incidents that allegedly occurred between the protected activity and the transfer.

application for a vacant custodial position; (2) Bridgewood's alleged request that Boyer perform a task that was impossible, followed by the alleged statement by Bridgewood and Horace: "How come I have to do this and that. This is Bullshit. Your are going to work alone. I'll make you work eight hours straight."; (3) Bridgewood and Harwood allegedly replacing Boyer's regular work with unfavorable tasks and assignments under unsafe conditions; (4) Bridgewood's alleged statement, in sum or substance, "F*** Jean Boyer. What's wrong with f***king Haitian People? No one can get me in trouble."; and (5) Bridgewood's alleged statement, in sum or substance, "We don't need no Haitians. The district doesn't need any Haitians for custodians." In short, plaintiff's allegations on the retaliation claim are sufficient to satisfy Rule 8 and survive a motion to dismiss. The Court cannot conclude that no "plausible" retaliation claim exists under Title VII.

The District has not made any claim that plaintiff failed to give sufficient notice of his claim. Instead, defendant argues the merits of plaintiff's claim. The fact that defendant was able to argue the merits is evidence that defendant has had sufficient notice, and that plaintiff's complaint achieves the ends the Second Circuit described in *Simmons*. *Simmons*, 49 F.3d at 87 (holding that a movant's failure to argue non-compliance with Rule 8 was evidence that the plaintiff's complaint contained sufficient notice); *see also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (stating that the movant's failure to argue a lack of notice was evidence that sufficient notice was given through the pleadings). Thus, although the defendant may believe that there is a lack of evidence to support plaintiff's claim, "[t]his simplified notice pleading standard [under Rule 8(a)] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. Thus, the District will have a full opportunity to raise these arguments should it move for summary judgment at the conclusion of discovery.

IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), is granted as to the failure to promote claims under Title VII and denied in all other respects.[3]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 14, 2008
Central Islip, New York

\* \* \*

The attorney for the plaintiff is Neil M. Frank, Esq., of Frank & Associates, P.C., 500 Bi-County Blvd., Suite 112N, Farmingdale, New York 11735. The attorney for the defendant is Richard K. Zuckerman, Esq., of Lamb & Barnosky LLP, 534 Broadhollow Rd., Ste. 210, P.O. Box 9034, Melville, New York, 11747-9034.

---

[3] Although plaintiff's opposition brief makes a brief reference to New York State Human Rights Law ("NYSHRL"), the complaint does not allege any such state claims. If plaintiff wishes to add such claims, plaintiff should make a formal motion to amend.